## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| MANSOUR GAVIN LPA, | ) | Case No. 1:23-cv-02105 |
| | ) | |
| Plaintiff, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | |
| | ) | |
| EXCLUSIVE GROUP HOLDINGS, | ) | |
| INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## <u>OPINION AND ORDER</u>

This breach of contract dispute arises from Defendant Exclusive Group Holdings Inc.'s alleged failure to pay for the services of its lawyers at Plaintiff Mansour Gavin LPA.  Plaintiff initially filed suit in the Cuyahoga County Court of Common Pleas (Case No. CV-23-985744), and Defendant removed the case based on diversity jurisdiction.  Because of ongoing litigation Exclusive Group Holdings faces in Florida, Defendant moves to transfer this case to the Middle District of Florida under 28 U.S.C. § 1404(a) or, alternatively, for a stay of the litigation.  For the reasons that follow, the Court **DENIES** Defendant's motion to transfer, **DENIES** Defendant's motion to stay, and **GRANTS** Defendant's motion for an extension of time to answer, move, or otherwise plead in response to the complaint.

## STATEMENT OF FACTS

Mansour Gavin is a law firm whose principal place of business is in Cleveland, Ohio.  (ECF No. 1-1, ¶ 1, PageID #8.)  It only has offices in Northeast Ohio.  (ECF No.

9-1, ¶ 5, PageID #267.)  All lawyers at Mansour Gavin who provided legal services to Exclusive Group Holdings are located in Northeast Ohio and licensed to practice in Ohio.  (*Id.*, ¶ 6.)  Two Mansour Gavin attorneys are also licensed to practice in Florida; however, neither did legal work of relevance in this dispute.  (ECF No. 5-1, ¶ 12, PageID #40.)  Exclusive Group Holdings is a Florida corporation with its principal place of business in Florida.  (*See* ECF No. 1, ¶ 7, PageID #2.)

In 2018, Exclusive Group Holdings signed a retainer agreement with Mansour Gavin to assist in terminating its business relationship with Celera Telecom Ltd. (ECF No. 1-1, ¶¶ 2 & 5, PageID #8–9; ECF No. 9-1, ¶ 3, PageID #266.)  The scope of Mansour Gavin's representation involved assistance with litigation in Florida State court between Exclusive Group Holdings and Celera Telecom.  (ECF No. 9-1, ¶ 3, PageID #266.)  The Mansour Gavin attorneys licensed to practice in Florida did not appear in the Celera matter, instead, other Mansour Gavin attorneys who were based in Northeast Ohio and licensed to practice in Ohio appeared *pro hac vice*.  (*Id.*, ¶ 6, PageID #267; ECF No. 5-1, ¶ 12, PageID #40.)  In the event that Mansour Gavin withdrew from the representation, the retainer agreement provided that the Ohio Supreme Court Rules of Professional Conduct govern.  (ECF No. 9-1, PageID #272.) Though the agreement referenced the Ohio Supreme Court Rules of Professional Conduct elsewhere (*see id.*, PageID #271), it contained no other forum selection clause or choice of law provision (*see id.*, PageID #270–72).

Mansour Gavin billed Exclusive Group Holdings for 1,165.10 hours of work on the Celera matter, performing 93% of that work in Ohio and 7% in Florida.  (*Id.*, ¶ 7,

PageID #267.)  Exclusive Group Holdings allegedly owes $132,989.06 to Mansour Gavin.  (*Id.*, PageID #274.)  All billing records, invoices, and Mansour Gavin's witnesses are in Ohio.  (*Id.*, ¶¶ 16–18, PageID #268.)  Mansour Gavin has been unsuccessful in seeking payment since December 5, 2019.  (*Id.*, ¶ 15.)

Exclusive Group Holdings disputes some of the fees allegedly owed and claims it "has no resources to pay any alleged additional invoices" because of the litigation it faces in Florida against other entities.  (ECF No. 5-1, ¶¶ 19–20 & 29, PageID #41 & 42–43.)  Exclusive Group Holdings represents that Mansour Gavin "specifically agreed that it would wait to resolve any issues with the outstanding invoices until after" it resolved the other litigation.  (*Id.*, ¶ 29, PageID #42–43.)

Excusive Group Holdings proffers an email chain between Mary Mooney (an officer and sole director of Exclusive Group Holdings) and Ernest P. Mansour (a Mansour Gavin attorney) to show that Mansour Gavin agreed to defer payment.  (*Id.*, PageID #155–56.)  On December 31, 2021, Mooney wrote, "I have a dividend check coming in January [2022], we will use a portion of that to begin paying the [Celera matter's] balance."  (*Id.*, PageID #155.)  Mansour responded, "Yes, that is fine."  (*Id.*)  And then Mooney replied, "[s]hould the financial position of exclusive group change significantly before receipt of the dividend check, I will remit payment sooner."  (*Id.*)

Mansour Gavin disputes the existence of an agreement to refrain from collecting payments until the conclusion of Exclusive Group Holdings' other litigation (ECF No. 9-1, ¶ 14, PageID #268) and maintains that the ongoing Florida litigation is unrelated to the Celera matter (*id.*, ¶ 5, PageID #267).

Exclusive Group Holdings describes the Florida litigation as "bet the company litigation" as it attempts to recover for non-payment of its insurance claims. (ECF No. 5-1, ¶ 19, PageID #41–42.) The Florida defendants have "'frozen' all or substantially all of Exclusive Group's capital." (*Id.*, ¶ 20, PageID #41.) Previously, the Florida litigation was pending in the Middle District of Florida, but on December 12, 2023, the case was remanded to Florida State court. *See Exclusive Group Holdings, Inc. v. National Union Fire Ins. Co.*, No. 2:22-cv-00474, ECF No. 110, PageID #3613 (M.D. Fla. Dec. 12, 2023). Mansour Gavin attorneys were on the service list of the initial complaint and Exclusive Group Holdings argues that Mansour Gavin's correspondence with one of the Florida defendants is at issue in that case. (ECF No. 5-1, ¶¶ 23 & 26, PageID #42.) Mansour Gavin no longer represents Exclusive Group Holdings. (ECF No. 9-1, ¶ 12, PageID #267–68.)

Exclusive Group Holdings' has *pro bono* counsel, Cullin O'Brien, based in Florida and licensed to practice in Florida and Ohio. (ECF No. 5-1, ¶ 31, PageID #43.)

## STATEMENT OF THE CASE

On September 20, 2023, Plaintiff sued Defendant in the Cuyahoga County Court of Common Pleas (Case No. CV-23-985744), raising claims for breach of contract (Count I), unjust enrichment (Count II), and recovery under a theory of *quantum meruit* (Count III). (ECF No. 1-1, ¶¶ 4–14, PageID # 9–10.) Defendant timely removed this action under 28 U.S.C. § 1332 based on diversity jurisdiction. (ECF No. 1, PageID # 1.)

4

Then, Defendant filed a motion to transfer this case to the Middle District of Florida under 28 U.S.C. § 1404 or, in the alternative, a motion for a stay, or in the second alternative, a motion for an extension of time to respond to the complaint. (ECF No. 5.)  Notably, Defendant does not contest personal jurisdiction or venue in the Northern District of Ohio.  Plaintiff opposes Defendant's motion in its entirety but does not dispute whether this suit could have been brought in the Middle District of Florida.  *See Rosskamm v. Amazon.com, Inc.*, 637 F. Supp. 3d 500, 508 (N.D. Ohio 2022) (determining that the defendant's motion to transfer satisfied the threshold inquiry under Section 1404(a) because the action "might have been brought" in the transferor forum).

## ANALYSIS

Because Defendant's alternative motions sequentially present various options to transfer or defer litigation, the Court takes them up in order as necessary.

## I.  **Motion to Transfer**

28 U.S.C. § 1404 allows for a change of venue.  Subsection (a) provides:  "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district court or division where it might have been brought or to any district or division to which all parties have consented." *Id.* § 1404(a).

The Court has broad discretion in determining whether to transfer a case under Section 1404(a).  *Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994).  In making this determination, the Court must balance multiple often-competing factors: the convenience of the parties, the locations of witnesses, where the operative facts

occurred, the ability to compel the attendance of witnesses at trial, ease of access of sources of proof, the plaintiff's choice of forum, and the interests of justice. *See Means v. United States Conf. of Cath. Bishops*, 836 F.3d 643, 651 (6th Cir. 2016). In weighing these factors, "if a change of venue serves merely to shift the inconvenience from one party to another, a change of venue is generally not warranted." *Siegfried v. Takeda Pharms. N. Am., Inc.*, No. 1:10-cv-02713, 2011 WL 1430333, at *2 (N.D. Ohio Apr. 14, 2011) (citations omitted). The party requesting transfer "bears the burden of proof to show the factors weigh 'strongly' in favor of transfer." *Picker Int'l, Inc. v. Travelers Indem. Co.*, 35 F. Supp. 2d 570, 573 (N.D. Ohio 1998).

### I.A.    Private Interest Factors

### I.A.1. Plaintiff's Choice of Forum

Plaintiff, an Ohio law firm, chose to sue Exclusive Group Holdings in its home State of Ohio. District courts accord "great deference to a plaintiff's choice of forum," especially where plaintiffs sue in their home forum. *DISC Env't Servs., Inc. v. Usher Oil Co.*, 343 F. Supp. 3d 705, 709 (N.D. Ohio 2018) (cleaned up); *Picker Int'l*, 35 F. Supp. 2d at 573 (concluding that because the plaintiff chose to litigate "in its home state of Ohio . . . that choice is given much deference"). This factor favors a forum in Ohio and weighs against transfer.

### I.A.2. Convenience of the Parties

Defendant argues that venue in Ohio is inconvenient because it is a Florida corporation with no ties to Ohio. Plaintiff argues that "[a]ny inconvenience associated with Defendant's travel to Ohio is the same or less than Plaintiff's should its lawyers be compelled to travel to Florida to litigate this collection case." (ECF No. 9, PageID

6

#259.)  Exclusive Group Holdings retained Ohio lawyers to litigate on its behalf in Florida, and transferring venue merely seeks to shift its burdens of litigating in Ohio to Mansour Gavin, which would be burdened by litigating in Florida.

Next, Defendant argues that it lacks sufficient resources to litigate this case in Ohio.  The imbalance of resources between Plaintiff and Defendant is a relevant consideration.   Still, transfer if not warranted where, as here, the marginal convenience to one party fails to offset the added inconvenience to the other.  *General Sci. Corp. v. SheerVision, Inc.*, No. 10-cv-13582, 2011 WL 3880490, at *6 (E.D. Mich. Sept. 2, 2011) (considering the resources available to the parties, but ultimately concluding that "a motion to transfer venue requires more" than alleviating the financial burden on one party by trading it to the other).

In the Court's view, these considerations involve little more than shifting of burdens between the parties and, therefore, do not warrant a change of venue.  *See Siegfried*, 2011 WL 1430333, at *2.  Defendant adds that transfer will allow it to litigate this case along with the other actions in which it is involved in Florida.  Again, this argument reinforces the convenience to Exclusive Group Holdings.  But this argument holds no convenience to Mansour Gavin and no offsetting overall convenience for the litigation of *this* dispute.

### I.A.3. Operative Facts and Sources of Proof

Defendant argues that Plaintiff rendered the legal services for a Florida lawsuit and that nearly all the pertinent documents are in Florida.  Plaintiff argues that it rendered 93% of the legal services in Ohio and that all billing records and evidence of its damages are in Ohio "where the debt is due and payable."  (ECF No. 9,

7

PageID #259.) The parties have already filed documentation with the briefing for this motion—including emails, billing records, and court documents from the Celera and the Florida litigation. Any other documentation about the legal services Plaintiff provided and billing and payment records are likely all located in Ohio. Defendant does not indicate what other sources of proof are in Florida and how transferring those documents to Ohio would create hardship, particularly in this age of electronic discovery. This factor favors Ohio.

### I.A.4. Witnesses

Convenience for witnesses is "probably the single most important factor in the transfer analysis." *Timken Gears & Servs. Inc. v. White*, 5:22-cv-02189, 2023 WL 5523947, at *5 (N.D. Ohio Aug. 28, 2023) (quoting *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1318 (Fed. Cir. 2021)). Convenience of witnesses, however, "is not a numbers game; a court should not merely tally the witnesses but should instead evaluate the significance of their expected testimony." *Siegfried*, 2011 WL 1430333, at *3 (holding that the location of witnesses of "central relevance" to the dispute weighed in favor of transfer); *CapitalPlus Equity, LLC v. Tutor Perini Bldg. Corp.*, 3:17-cv-00051, 2017 WL 5586663, at *6 (E.D. Tenn. Nov. 20, 2017) (requiring the party seeking transfer to specify the essential witnesses and make a general statement of what their testimony will cover).

Defendant identified three witnesses, all of whom are located in Florida: Mary Mooney, the sole director of Exclusive Group Holdings, James P. Mooney, Ms. Mooney's husband, and Ashley Awiszus, a former employee of Exclusive Group Holdings. (ECF No. 5, PageID #32; ECF No. 5-1, ¶ 35, PageID #44; ECF No. 10,

PageID #285.)  Plaintiff's witnesses are all located in Ohio:  Edward O. Patton, a Mansour Gavin attorney assigned to the Celera matter, Anthony J. Coyne, the president of Mansour Gavin, and employees in Mansour Gavin's billing department. (ECF No. 9, PageID #256.)

Generally, if key witnesses are employees of the party seeking transfer, their convenience is entitled to less weight than other witnesses.  *Zimmer Enters., Inc. v. Atlandia Imps., Inc.*, 478 F. Supp. 2d 983, 991 (S.D. Ohio 2007).  The only (potential) non-employee witness Defendant identifies is Mr. Mooney.  But Defendant did not describe what his testimony would cover or how it relates to this dispute.  On the other hand, Plaintiff identified an attorney who billed time on the Celera matter and employees of the billing department at Mansour Gavin.  These individuals will likely be necessary witnesses in this action.  For these reasons, this factor favors Ohio.

### I.B.    Public-Interest Factors

#### I.B.1. Judicial Economy and Familiarity with Governing Law

Neither party presents evidence that either relevant District has a significantly higher or lower caseload than the other.  Therefore, this consideration is neutral.

Concerning familiarity with the governing law, without any analysis, Defendant argues that Florida law governs this dispute.  Plaintiff argues that Ohio law controls because the retainer agreement includes a choice of law provision dictating that the Ohio Supreme Court Rules of Professional Conduct governs withdrawal from the representation.  However, that choice of law provision does not dictate that Ohio law governs breaches of contract.  At least based on the record before

9

it, the Court reads the retainer agreement to include no choice of law provision for breach of contract. *See Bold Home Prods., LLC v. CarbonKlean, LLC*, No. 2:20-cv-4020, 2022 WL 1406649, at *3 (S.D. Ohio May 4, 2022) ("The contractual choice of law provision is controlling as to matters within its scope.").

In breach of contract cases, where, as here, the contract lacks a choice-of-law provision, Ohio law provides that the Court should apply the law of the State with the most significant relationship to the parties and the contract. *Ohayon v. Safeco Ins. Co. of Ill.*, 91 Ohio St. 3d 474, 477, 2001-Ohio-100, 747 N.E.2d 206, 209 (2001). In ascertaining which State that is, the Court "should consider the place of contracting, the place of negotiation, the place of performance, the location of the subject matter, and the domicile, residence, nationality, place of incorporation, and place of business of the parties." *Id.* (citing Restatement (Second) of Conflicts § 188(2)(a)–(d) (Am. L. Inst. 1971)).

The parties provide no information about where they negotiated or signed the retainer agreement. Plaintiff addressed the agreement to Defendant at a Delaware address. Defendant retained Plaintiff, an Ohio law firm, which performed a majority of the legal services in Ohio for litigation in Florida. Lawyers from Mansour Gavin appeared *pro hac vice* in Florida for the suit. The injury Plaintiff suffered due to Defendant's alleged breach—non-payment for the work Plaintiff performed—was

sustained in Ohio.  The places of incorporation are Ohio and Delaware.  The parties' businesses are in Ohio and Florida.

Both Ohio and Florida have connections to the retainer agreement, but Ohio has the most significant relationship to the parties and the contract.  *See Babcox Media, Inc. v. TFI Envision, Inc.*, No. 5:13-cv-1786, 2022 WL 2818441, at *3 (N.D. Ohio July 18, 2022) (concluding that Ohio had the most significant relationship to the plaintiff's breach of contract claims because Ohio was where the contract was performed and breached).  Therefore, the Court's familiarity with governing law favors Ohio.

If Florida law governed the dispute, "when the case involves basic or well-established, as opposed to complex or unsettled, issues of state law or when there is no reason to believe that the applicable law of the forum differs markedly from the law of the proposed transferee forum," the court's familiarity with the governing law receives less weight.  Charles Alan Wright & Arthur R. Miller, 15 *Federal Practice and Procedure* § 3854 (4th ed. April 2023); *see also In re Ryze Claims Sols., LLC*, 968 F.3d 701, 708–09 (7th Cir. 2020) (holding that the district court erred by weighing the familiarity with the governing law factor too heavily in favor of transfer when it did not identify any features of the relevant law that were "unique or idiosyncratic").

This case involves a routine contract dispute, and neither party maintains that the applicable law is complex or that Florida and Ohio contract law differ in any material respect.  Because federal judges routinely apply the law of other States, *Atlantic Marine Constr. Co. v. United States Dist. Ct. for the W. Dist. of Tex.*, 571 U.S.

49, 67 (2013), familiarity with the substantive law represents a neutral factor if Florida law governs.

### I.B.2. Interests of Justice

Any number of things can lead the interests of justice to weigh in favor of or against transfer. *See, e.g.*, *Berg Corp. v. Norris Mfg., LLC*, No. 5:20-cv-100, No. 5:20-cv-2297, 2021 WL 915895, at *4 (N.D. Ohio Mar. 10, 2021) (holding that the interests of justice weighed against a second transfer of the same lawsuit).

Generally, there is a public interest in having localized interests decided at home. "Ohio has a strong interest in resolving a dispute involving an Ohio company." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1269 (6th Cir. 1996). Here, the dispute involves an Ohio law firm whose out-of-state client owes unpaid legal fees. The Ohio public has an interest in their in-state businesses' ability to recover unpaid debts from out-of-state clients, without having to travel to foreign jurisdictions to do so.

Defendant argues that transfer is warranted because this case and the Florida litigation are related. To serve the interests of justice, courts will transfer and consolidate related litigation to avoid potentially conflicting rulings and wasting resources. *See North v. McNamara*, 47 F. Supp. 3d 635, 648 (S.D. Ohio 2014) (transferring a case where a shareholder derivative suit "arising from the same core set of facts" was filed first in another district because it was "efficient" and "avoid[ed] inconsistent judgments on the same or a similar set of facts and claims"); *Wayne Cnty. Emps.' Ret. Sys. v. MGIC Inv. Corp.*, 604 F. Supp. 2d 969, 977–78 (E.D. Mich. 2009) (finding that the efficiencies of transfer outweighed any inconvenience where four

12

other practically identical cases involving the same legal issues and overlapping classes of plaintiffs were pending in another district court).

Defendant argues that the two cases are related because Plaintiff was on the initial service list of the complaint in Florida and that some of Plaintiff's correspondence with the Florida defendant is relevant to the Florida litigation. But Defendant makes no allegation that Plaintiff's correspondence with the Florida defendant is relevant to *this* litigation. From a review of the documents from the Florida litigation that Defendant proffered, the Court surmises that the two suits are unrelated, meaning, there is little if any overlap in the facts or legal claims or defenses. Defendant makes no argument that any legal determination in this case depends on the outcome of the Florida litigation—or vice versa.

Defendant argues that Plaintiff's lawsuit might impact the Florida litigation "as it pertains to the scope of discovery and confidentiality agreements." (ECF No. 10, PageID #287.) Defendant makes no reference to specific documents or discovery here that would impact the Florida litigation. And it is unclear why that concern would be alleviated through transfer—especially since the Florida litigation is no longer pending in the Middle District of Florida. Moreover, Plaintiff is no longer counsel in that suit. Nor is Plaintiff a party to the Florida litigation. The only extent the two matters could be related is that the outcome of the Florida litigation might affect

13

Defendant's ability to pay the debt at issue here should it be liable for breach of contract. But that fact does not make this case related to the Florida litigation.

Finally, Defendant argues that transfer is favored because it has *pro bono* counsel. The convenience of counsel, however, is "irrelevant and improper for consideration in determining the question of transfer of venue." *Whitehosue v. Life Ins. Co. of N. America*, No. 3:15-cv-00639, 2015 WL 7587361, at *3 (W.D. Ky. Nov. 25, 2015) (collecting cases). In any event, Defendant's counsel is licensed to practice in Florida and Ohio. While Plaintiff employs two attorneys licensed to practice in Florida, those attorneys are not counsel of record in this matter.

The interests of justice favor Ohio.

*     *     *

On balance, Defendant has failed to carry its burden to demonstrate that the "convenience of the parties and witnesses" and the "interests of justice" favor transferring this case to the Middle District of Florida. 28 U.S.C. § 1404(a). Absent such a showing, Plaintiff's choice of forum prevails. Accordingly, the Court **DENIES** Defendant's motion to transfer.

## II. Motion to Stay

In the alternative, Exclusive Group Holdings seeks to stay this case pending the outcome of the Florida litigation. Defendant argues that "all the current litigation does is overwhelm and tax Exclusive Group, which Exclusive Group does not have the financial wherewithal to sustain." (ECF No. 5, PageID #34.) Plaintiff argues that Defendant fails to carry its burden to demonstrate that a stay is warranted.

14

Since briefing on this motion closed, the Florida matter was remanded to State court.  Federal courts may abstain from exercising jurisdiction where parallel State litigation provides "an adequate vehicle for the complete and prompt resolution of the issue between the parties." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983).  Upon review of the record, however, abstention is not appropriate.  Again, the cases are not related, so the Florida litigation will not resolve the dispute between the parties.

Outside of abstention doctrines, a district court has inherent power to stay proceedings based on its authority to manage its docket "with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North America Co.*, 299 U.S. 248, 254 (1936).  However, the Court "must tread carefully in granting a stay of proceedings since a party has a right to a determination of its rights and liabilities without undue delay." *Ohio Env't Council v. United States Dist. Ct., S. Dist. of Ohio*, 565 F.2d 393, 396 (6th Cir. 1977).  Defendant bears the burden of establishing the need for stay by demonstrating "that neither the other party nor the public will suffer harm from the entry of the order." *Id.*

## II.A.  Governing Legal Standard

In awarding the stay, Defendant asks the Court to consider:  (1) the need for a stay; (2) the stage of litigation; (3) whether the non-moving party will be unduly prejudiced or tactically disadvantaged; and (4) whether the burden of litigation will be reduced for both parties and the Court.  (ECF No. 5, PageID #30 & 35 (citing *Kirby Devs., LLC v. XPO Glob. Forwarding, Inc.,* No. 2:18-cv-500, 2018 WL 6075071, at *2 (S.D. Ohio Nov. 20, 2018).)  In addition to these factors, courts also consider whether

15

a stay will simplify the issues.  *See Cybergenetics Corp. v. Institute of Env't Sci. & Rsch.*, No. 5:19-CV-1197, 2020 WL564217, at \*2 (N.D. Ohio Jan. 27, 2020) (citation omitted).

In opposing the stay, Plaintiff asks the Court to consider other factors: (1) whether the movant has demonstrated a likelihood of success on the merits; (2) whether the movant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other interested parties; and (4) where the public interest lies.  (ECF No. 9, PageID #262 (citing *Ottawa Dev. Corp. v. United States Dept. of Housing*, 21 F. App'x 307, 309 (6th Cir. 2001).)  These factors, however, are usually considered when the moving party seeks a stay pending appeal under Rule 8(a) of the Federal Rules of Appellate Procedure.  *See Michigan Coal. of Radioactive Material Users, Inc. v. Greipentrog*, 945 F.2d 150, 152–53 (6th Cir. 1991).

The Court will consider the factors that Defendant suggests because they are more relevant to this procedural posture.  Nonetheless, some of the factors on which Plaintiff relies overlap with Defendant's.  Therefore, the Court will also consider the overlapping factors and Plaintiff's arguments made in support.

## II.B.  Application

Considering the foregoing factors and reviewing the record, the Court determines that a stay is not warranted and, therefore, declines to exercise its discretion to stay this proceeding.  Defendant's primary argument for a stay is that simultaneous litigation in Florida and Ohio would "overwhelm and tax Exclusive Group."  (ECF No. 5-1, ¶ 32, PageID #44.)  As an initial matter, Defendant's claim is too speculative and vague to demonstrate a "clear case of hardship or inequity in

being required to go forward." *Landis*, 299 U.S. at 255.  Besides Mooney's assertions, Defendant provides no documentation to demonstrate its insolvency or lack of resources to litigate this contract dispute.

While courts frequently stay matters when other related litigation is pending elsewhere to conserve resources, *see, e.g.*, *Swetlic Chiropractic & Rehab. Ctr., Inc. v. Jorns & Assocs., LLC*, 2:23-cv-02200, 20223 WL 8598280, at *1 (S.D. Ohio Dec. 12, 2023), as discussed above, based on the Court's review of the record, the Florida litigation is not so related as to warrant a stay.  Whether Defendant breached its retainer agreement with Plaintiff is not at issue in the Florida litigation.  Defendant argues that the cases are related because Plaintiff's correspondence with the Florida defendant is at issue in that case.  But the correspondence Defendant proffers does not relate to the alleged breach of contract in this matter.  (ECF No. 5-1, PageID #99–109 & 133–37.)  Nor will adjudication of the litigation in Florida State court advance this case toward resolution.

Defendant also argues that a stay is warranted because if it is successful in Florida, it will be able to resolve this dispute.  (ECF No. 5, PageID #34.)  Meaning, that if Defendant is successful in Florida, it can afford to litigate and potentially resolve the disputed fees.  Defendant does not articulate any reason why any particular decision in Florida might simplify this breach of contract dispute. Therefore, that consideration does not weigh in favor of granting a stay.

Next, Defendant argues that Plaintiff would not be prejudiced by a stay because Plaintiff already agreed to defer payments on the unpaid fees until after the

17

Florida litigation had been resolved.  The emails Defendant proffered to support this agreement demonstrate that, at most, there was an agreement to wait until the end of January 2022 to render payment, if not earlier.  (ECF No. 5-1, PageID #154–59.)  Plaintiff will be prejudiced by further and indefinite delay from relief on its breach of contract claims.  *EMW Women's Surgical Ctr., P.S.C. v. Freidlander*, 591 F. Supp. 3d 205, 214 (W.D. Ky. 2022) (concluding that staying a case for an indefinite period of time to wait for other courts to issue decisions "does not support judicial economy and efficiency").  The stay merely defers resolution of this case to some unknown future date with no guarantee that Defendant will be any more able to litigate financially than it is now.

Defendant has not carried its burden to demonstrate that a stay is warranted.  Therefore, the Court **DENIES** Defendant's motion for a stay.

## III.    Motion for Extension of Time

Also, in the alternative, Defendant requests an extension of time to respond to the complaint.  Plaintiff opposes, arguing that the pending motion to transfer "does not excuse Defendant from answering or otherwise responding to the complaint in the required time."  (ECF No. 9, PageID #263.)  The Court may extend the deadline for answering the complaint, "for good cause" under Rule 6(b).  Because this case is in the early stages, Defendant's requested extension is reasonable.  Accordingly, for good cause shown and in the interest of facilitating a resolution of this dispute on the merits, the Court **GRANTS** Defendant's motion and sets April 21, 2024 as the deadline for Defendant to answer, move, or otherwise plead.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's motion to transfer, **DENIES** Defendant's motion to stay, and **GRANTS** Defendant's motion for extension of time.

**SO ORDERED.**

Dated:  April 3, 2024

_____

      J. Philip Calabrese
      United States District Judge
      Northern District of Ohio